HANSON, Respondent, vs. KNUTSON HARDWARE COMPANY,
Appellant.

*December 13, 1923—January 15, 1924.*

*Sales: Fraudulent conveyances: Bulk Sales Law: Who may claim
benefit of conditions: Statute of frauds: Delivery of stock of
goods: Evidence: Contract of sale: Construction.*

1. The conclusive presumption of fraud arising from the sale of
   a stock of goods in bulk without compliance with the condi-
   tions of secs. 2317c *et seq.,* Stats. (the Bulk Sales Law), is
   only for the benefit of the existing creditors of the seller,
   and does not affect the transaction as between the parties,
   prevent the passage of title, or defeat the right to recover
   the purchase price.   p. 464.

2. An agreement for the purchase of an entire stock of hardware at inventory valuation, the price when agreed upon to be applied to the payment of specified obligations of the seller, is not a special promise to answer for the debt of another, the consideration for which must, under sub. (2), sec. 2307, Stats., be expressed in the writing, as the provisions relate to the manner, not to the purpose or object, of the payment. p. 464.

3. The acceptance by the purchaser of an entire stock of hardware, of a key to the premises, the spreading of a sign in the front of the building announcing a change of ownership and a future sale, and sales by the purchaser's clerk in charge, establish a delivery and acceptance sufficient to satisfy the statute of frauds.   p. 464.

4. An agreement for the purchase of the entire stock in accordance with such terms, basis, and conditions as both parties may agree upon, and that payment should be made by the purchaser assuming certain obligations of the seller up to the inventory amount, and which contained an undertaking by the seller to furnish the premises for ninety days rent free, to permit of a disposal of the goods by defendant, and also covenants by the seller against competition, is not a mere promise to make an agreement in the future, defeasible by the purchaser's arbitrary refusal to proceed to fix a valuation. p. 465.

APPEAL from a judgment of the circuit court for Trempealeau county: E. C. HIGBEE, Circuit Judge. *Affirmed.*

Plaintiff and the defendant corporation had been for some time competitors in the hardware and implement business in the village of Blair. The plaintiff also ran a hotel there. Plaintiff and defendant's manager, Knutson, had at times discussed a possible purchase by defendant of plaintiff's business and plaintiff expressed a willingness to sell in April, 1922.

A contract was drawn by Knutson and signed by both on April 29th providing substantially as follows:

Plaintiff, "for a consideration for both parties to be agreed upon, agrees to sell and defendant to buy the stock of hardware, farm implements, store fixtures, etc., in the designated premises according to an inventory to be made by both parties."

Hanson v. Knutson Hardware Co. 182 Wis. 459.

Defendant agreed to pay for all said goods contained in the said inventory "a price in accordance with such terms, basis, and conditions as both parties may agree upon."

The terms and conditions of the payment of said stock of goods shall be settled by defendant assuming plaintiff's then obligations to "the Home Bank of Blair and other creditors up to and including the amount of said inventory."

Defendant was to have for ninety days the free use of the store building and premises (belonging to plaintiff) to enable defendant to dispose of and remove said stock, and the free use for one year of a portion of the premises for the storing and displaying of implements.

Plaintiff also engaged that there was to be included in the bill of sale which he shall execute a provision to the effect that he would in no wise thereafter carry on at any time within a radius of five miles the business so then sold by him, nor rent or sell his premises to any one for such purpose.

No provision was therein made other than as above with reference to plaintiff's creditors and none as to the outstanding agreements and notes, which were of substantial amount.

Pursuant to suggestions which were given by Knutson, plaintiff wrote his creditors under date of May 1st to the effect that he had made arrangements for the sale of his stock to his competitor to be transferred as soon as an inventory was made, and that he expected to settle their obligations as soon as he realized from the collection of his outstanding accounts and notes.

On May 4th defendant sent a circular letter to a number of plaintiff's creditors stating that negotiations were going on with plaintiff for such purchase, but that defendant's definite decision awaited notification to and satisfaction regarding their claims by the creditors. That as buyer defendant must have proper clearance and release of all demands and claims against the seller in accordance with the Bulk Sales Law.

On May 2d plaintiff and Knutson started to make an inventory of the stock and set down the agreed price for the

articles thereon, aggregating $9,579.08. A similar inventory was made of the store fixtures, but no price was agreed upon as to its items.

The defendant caused a sign to be placed on the front of the store reading: "Gone out of business; sold to Knutson & Co.; watch for the sale." This remained for about two days.

The inventory was finished on May 5th. Plaintiff's clerk who had assisted in the taking of the inventory was then hired by defendant. The premises were kept locked, with signs on the doors "Closed for inventory." Thereafter a few sales amounting to about $50 were made out of such premises by the clerk, and by defendant's direction the proceeds were turned over to plaintiff to be applied on the inventory price. The store has remained closed since then.

Plaintiff testified that Knutson said when the inventory was completed, "The stuff is mine; I am entitled to the key." It is conceded that Knutson was then given a key, the clerk another, and plaintiff retained one.

A considerable stock of farm implements was at the same time held by plaintiff on consignment from the Minnesota Moline Plow Company; these were also inventoried and a price list given to defendant by a representative of that company.

On May 12th defendant wrote a circular letter to all, or substantially all, of plaintiff's creditors reciting a desire on its part to comply with the Bulk Sales Law, and that owing to the condition in which plaintiff kept his affairs defendant was unable to get accurate information as to plaintiff's standing with his creditors. Defendant then gave approximate figures as to plaintiff's situation, showing liabilities of $31,500, assets of $21,200, and a deficit of $10,300. The facts in the record, however would justify the conclusion expressed by the court that such statement was incorrect and misleading.

Some of the creditors wrote refusing to consent to any

such disposition of the stock until their claims had been paid or adjusted.

Defendant refused to proceed further with the deal and sent back the key to plaintiff on July 24th. Insurance was continued by plaintiff. The Bank of Blair, the largest creditor of plaintiff and to the extent of over $16,000 but with other security, was satisfied with the arrangement and has not started any proceeding against either party.

After demand in writing upon defendant for settlement of the matter suit was started August 5, 1922. Two causes of action were set forth in the complaint:

1. A sale and delivery by plaintiff to defendant on or about May 5, 1922, at its request, of goods and merchandise of the agreed value of $9,579.08, for which defendant agreed to pay.

2. A sale and delivery by plaintiff to defendant, at its request, on or about May 5th, of furniture and fixtures of the reasonable value of $1,000.

Defendant answered, and, a jury trial being waived, the trial court made his findings as to the written agreement of April 29th and the making of the inventory of both stock and fixtures between May 2d and 5th, and that the price to be paid for the stock was $9,579.08, "and that the price and value of said fixtures which the defendant was to pay therefor was the sum of $1,000." That the plaintiff delivered the stock and fixtures and the defendant received and accepted the same pursuant to the agreement. That the plaintiff was entitled to judgment.

From the judgment defendant appeals.

*Ole J. Eggum* of Whitehall, for the appellant.

For the respondent there was a brief by *Gaveney & Barlow* of Arcadia, and oral argument by *E. E. Barlow*.

ESCHWEILER, J. Defendant contends that the written agreement between the parties of April 29th was necessarily void and affords no basis for any cause of action in favor

of plaintiff because the provisions of secs. 2317c *et seq.,* Stats., the Bulk Sales Law, were not complied with by the plaintiff as seller. But by the express language of this statute the conclusive presumption of fraud arising from the sale of a stock of goods in bulk without compliance with the statutory conditions is only for the benefit of the existing creditors of such seller. It does not affect the transaction as between the parties, prevent the passing of title to the goods, or defeat the right to recover the purchase price. *Prokopovitz v. Kurowski,* 170 Wis. 190, 194, 174 N. W. 448; *Zahl v. Billings,* 118 Wis. 459, 95 N. W. 374.

It is also contended that there can be no right to recover because of sub. (2), sec. 2307, Stats., requiring that the consideration be expressed in any written agreement wherein the party sought to be charged makes a special promise to answer for the debt of another; defendant insisting that, inasmuch as the agreement provided for the application by defendant of the purchase price, when agreed upon, to the payment of specified obligations of plaintiff, it was such a promise to pay the debt of another as to require, under this statute, the expression of the exact amount in dollars of an agreed purchase price, the consideration. The agreement, however, is plainly not within the class covered by that statute, the provisions here before us relating merely to the manner rather than to the purpose or object of the payment.

It is also contended that the provisions of sec. 2308, Stats., interpose a bar to the plaintiff's recovery in that, this being an agreement concerning the sale of goods of more than $50 in value, there is no proper note or memorandum in writing of any contract between them, and no accepting or receiving a part of such goods sufficient to make a binding agreement.

The defendant did accept and assume possession of substantially all the personal property included in the agreement and under and pursuant to it. His sign spread across the front of the building was a public declaration that a delivery sufficient to effect a sale had been made. His taking and re-

taining possession of the key to the premises in which the goods were found, the assuming of control thereover, the subsequent sales by his clerk, all furnish ample support for the conclusion of the trial court that there had been a delivery and acceptance. That they remained on the plaintiff's premises is entirely immaterial in view of the express provision to that effect in the writing which had been prepared by defendant's manager.

Again, it is contended that inasmuch as the writing provided that the payment by defendant was to be in accordance "with such terms, basis, and conditions as both parties may agree upon," and further, that the payment for same should be settled by defendant assuming specified obligations of plaintiff up to the inventory amount, and that since there had never been a meeting of the minds as to the exact price for the store fixtures or the precise terms or times of payment, the agreement continued to be merely, and at most, a promise to make an agreement in the future and therefore a situation had never been reached warranting the judgment entered.

The contract in this case, however, was much more than a mere proposal to make a subsequent agreement for the sale of goods. The plaintiff, owner of the real estate on which the store was located, bound himself to furnish the premises for ninety days, rent free, to permit of the disposal or removal of the goods by defendant. This condition was carried out by the plaintiff and accepted to some extent at least by defendant. The plaintiff further bound himself not to, either directly or indirectly, engage in such business nor assist any one else to enter into competition with defendant nor to permit his real estate to be used by any competitor of defendant—a condition of evident substantial value to the latter.

It is conceded that the parties did agree upon the purchase price to be fixed on the merchandise included in the transaction. The plaintiff was ready and willing to meet with

defendant and fix the price upon the store fixtures. The presumption can reasonably be indulged that such price would have been fixed at a reasonable value and could have been determined by the parties, as had been that of the merchandise. The defendant's refusal to proceed to fix such valuation was purely arbitrary, without justification, and through no default of plaintiff. There is evidence that the reasonable value of the fixtures was the amount found by the court, and defendant offered none to the contrary and ought not to be heard to now complain either as to the amount or its allowance.

That defendant did not take advantage of the provision permitting it to pay directly to plaintiff's creditors instead of to plaintiff was defendant's own fault. Knutson knew that plaintiff expected to pay the merchandise creditors from the proceeds of the outstanding accounts rather than from the sale of the goods, as shown by the letter of May 1st signed by plaintiff but prepared at Knutson's suggestion. Defendant could have provided in the agreement for literal or substantial compliance by plaintiff with the Bulk Sales Law or incorporated other conditions for its protection had it so desired. The plaintiff has not defaulted in any undertaking on his part, while defendant has as to its agreement, and for its default to pay before suit it was properly held compelled to pay by suit.

*By the Court.*—Judgment affirmed.