INTERNATIONAL SHOE COMPANY, Appellant, vs. CHAIMSON, Intervener, imp., Respondent.

*May 14—October 13, 1931.*

476

For the appellant there were briefs by *Thompsons, Gruene-wald & Frye* of Oshkosh, and oral argument by *Robert R. Thompson* and *A. H. Gruenewald*.

*Gad Jones* of Wautoma (*Schubring, Ryan, Clarke & Petersen* of Madison of counsel on motion for rehearing), for the respondent Chaimson.

The following opinion was filed June 12, 1931:

WICKHEM, J. This case presents two questions: First, did the partners, Hughes and Cujak, falsely and fraudulently misrepresent their net worth to the plaintiff, in such a way as to give to plaintiff the right to rescind as to Hughes and Cujak? Second, assuming that the first question is answered in the affirmative and that the title of Hughes and Cujak to the goods sold was defective and voidable, was the defendant Chaimson an innocent purchaser for value, and entitled to take free and clear from plaintiff's equity of rescission?

As to the first question, we have concluded that there was such misrepresentation as would entitle plaintiff to rescind as against the partnership. In the face of the conceded fact that this partnership had never operated at a profit, and that one of the partners had been compelled, during 1928, to borrow the sum of $1,500 to pay on account of the purchase

price, and $3,000 to pay partnership creditors, the partnership found it possible to represent its assets as having increased by almost $1,500 during the period of scarcely more than six months between the two financial statements. That it was able to do this may partially be accounted for by the fact that it failed to list as a partnership obligation, debts amounting to $3,500, which Cujak had incurred by borrowing on his own personal credit, the proceeds of which were used to pay partnership debts and which he expected the partnership to repay to him. It may also be partly accounted for by the fact that the partnership kept no adequate books of account, and that the only method the partners had of listing their liabilities was to add up the bills on the spindle. At any rate it is significant that hardly three months after making the second statement the partnership was insolvent, owing almost six times the obligations listed in the statement and with considerably less than half the assets claimed by the statement, assuming the stock and fixtures to have been sold to Chaimson for about two thirds of their value. As was said in *Fechheimer & Co. v. Baum & Bro.* 37 Fed. 167, 176, 2 L. R. A. 153, in commenting upon a somewhat similar situation:

"For this startling transformation of their condition they offer neither explanation nor excuse. There had been no disaster from flood or fire, no epidemic, none of those extraordinary circumstances which at times cause the stoutest business houses to tremble. In May there is an indebtedness of $36,000, in December a debt of $150,000; in May there are neither liens nor mortgages, in December they approximate $70,000. In the spring creditors were assured of prompt payment; in the fall they are met by hopeless insolvency."

We are satisfied from all the evidence that there was a misrepresentation in the statement of February 16th of the net worth of this partnership. That these representations

were representations of material facts and made to induce the sale seems clear to us, and if they were relied upon by the seller they are sufficient to render the sale voidable at the election of the seller, whether the purchaser knew or did not know that the representations were false, provided he either knew or ought to have known the truth of the statements before making them, or provided he made them recklessly and without knowledge of the facts. The doctrine in this state upon the subject is fully set forth in *Krause v. Busacker,* 105 Wis. 350, 81 N. W. 406; *First Nat. Bank v. Hackett,* 159 Wis. 113, 149 N. W. 703; *De Swarte v. First Nat. Bank,* 188 Wis. 455, 206 N. W. 887.

The next question is whether the plaintiff did rely upon the misrepresentations of net worth, and whether the plaintiff had a right to rely upon them. That there was reliance is indicated clearly by its correspondence and the fact that the orders for shoes were held up pending the financial statement, and approved after examination of the statement by plaintiff. However, it is contended on the part of the respondent that the two statements show that the business was headed for bankruptcy; that the first statement shows gross sales of $20,000, while the second shows gross sales of a little over $11,000; that the second statement shows a shrinkage in the value of the merchandise on hand, as well as a shrinkage in the amount of cash on hand and in the bank. We think, however, that the statement of February 5th showing, as it does, an increase in the net worth of almost $1,500 within a period of about six months, could be relied upon by the plaintiff as evidence that the firm was making progress, and that it still had a sufficiently wide margin of solvency to warrant a continuance of business relations.

It being our conclusion that the sale was voidable as to the partnership, the remaining question is whether the defend-

ant Chaimson was an innocent purchaser for value without notice, and consequently entitled to take free and clear of any claims to rescission which plaintiff might have. It is stipulated that there was complete compliance with the Bulk Sales Act. It is contended by respondent that the Bulk Sales Act in no way prevents the passing of title, and the case of *Hanson v. Knutson H. Co.* 182 Wis. 459, 196 N. W. 831, is cited to this point. In the *Hanson Case,* which was an action between the vendor and vendee, the Bulk Sales Act was not complied with, and the rule laid down in that case is that laid down generally in cases of fraudulent conveyances, to the effect that as between the vendor and vendee title passes, and the sale is valid and binding. The case did not involve in any way the rights of third persons, or a situation in which the Bulk Sales Act had been complied with.

To the effect that the legislative intent in the Bulk Sales Act is to hold the sale in suspense pending the action of creditors, appellant cites *Block v. Brackett,* 214 Ill. App. 488. In that case, after receiving notice under the Bulk Sales Act, one of the creditors caused execution to be issued and levied on the property, and the court sustained his right to do so, saying: "The manifest intention of this is to afford creditors the opportunity of taking steps with reference to the stock of goods as they may desire in order to protect themselves. During the five days the sale is in suspense pending the action of creditors there is nothing that the vendor or vendee can do to deprive the creditor of his rights against the property." From this it is contended that the intention of the act is to hold the sale in abeyance in order to enable the creditors to investigate the sale, and then to pursue whatever course they determine is most advantageous for them. We do not find it necessary to decide whether this contention is valid or not. At all events, if compliance with the Bulk Sales Act prevents the title from passing to the

vendee, or results in his failure to pay value until he has received notice of a defect in title, it is clear that the vendee cannot be an innocent purchaser for value. It is not necessary to hold that this is one of the intended results of the Bulk Sales Act, if in fact compliance with the Bulk Sales Act makes it impossible for the buyer to be an innocent purchaser for value. In this case the agreement of sale provides:

"Property sold hereunder to remain in the possession of the sellers until June 17, 1929, and purchase price paid on that date providing no action of attachment or garnishment shall have been commenced by any of the seller's creditors and shall then be pending."

From this it is apparent that whether the title to the property passed by the bill of sale or not, Chaimson did not at that time pay value, nor was he obligated to pay value until June 17, 1929, and then only in the event that no action of attachment or garnishment shall have been commenced by any of the creditors pending at that time. At the time of receiving notice of plaintiff's claims, Chaimson had not paid for the goods and hence had not established his status as an innocent purchaser for value. Under these circumstances he is not in a position to resist plaintiff's claim to these goods.

The foregoing conclusions compel a reversal of the judgment.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment for plaintiff in accordance with this opinion.

A motion for a rehearing was denied, with $25 costs, on October 13, 1931.